UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Ecology Coatings, Inc.,                                  Case No.: 13-49950-wsd
                                                                         Chapter 7
           Debtor.                                  Hon. Walter Shapero

_____/

## OPINION GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY

### Background

Ecology Coatings, Inc. ("Ecology") is a Nevada corporation with a business presence in Michigan and Ohio. It developed innovative multi-use coatings intended to be cost-effective and environmentally friendly because they were cured by ultraviolet light rather than heat. Ecology's primary assets are a number of patents and patent applications, as well as various formulas, trademarks, and other forms of intellectual property (together, "Intellectual Property"). Ecology became a public company in July 2007, but never had a public offering. A valuation conducted in February 2008 estimated the potential value of the Intellectual Property at $50-$55 million. Ecology's apparent potential led various equity investors and Ecology's own officers to invest large sums of money in it. It undertook efforts to (a) sell or license the Intellectual Property, including through brokers and large chemical companies and (b) market the Intellectual Property to various prominent businesses, as was evidenced in its lengthy Commercial Opportunity Summary (Ex. 1). Ultimately, Ecology was altogether unsuccessful in commercializing or realizing any material value from the Intellectual Property. Daniel Iannotti testified that during his time as Ecology's vice president, general counsel, and secretary (between August 2008 and December 2012), it only earned about $30,000 in revenue, mostly not from actual sales or

licensing, but rather by Ecology being reimbursed for the costs of product trials it conducted for potential customers. A majority of these product trials were unsuccessful.

As of the spring of 2010, Ecology was unable to acquire new financing and was virtually bankrupt. John Michael Salpietra, who was friendly with members of Ecology's board of directors, stepped in to finance its operations. On or about May 11, 2010, Ecology signed a Secured Promissory Note ("Note") for $600,000 at 4.75% interest, which evidenced Ecology's repayment obligation to Salpietra on a loan for that amount, which was secured by the Intellectual Property. That same day, Salpietra wired $300,000 from his personal bank account into Ecology's bank account and made 17 other wire transfers to Ecology in various amounts between June 2010 and December 2010. Altogether, these transfers totaled $600,000, as evidenced by bank records (Ex. 2). Ecology filed notice of this transaction with the Securities and Exchange Commission. On May 10, 2010, Salpietra recorded his security interest in the Intellectual Property with the Nevada Secretary of State, but did not record it with the U.S. Patent and Trademark Office.

Pursuant to the terms of the Note, at some point, the maturity date was extended by 30 days in exchange for Salpietra receiving the option to purchase 15,000 shares of Ecology stock. Iannotti testified that there may have been a number of such extensions. Subsequently, after Ecology exhausted the $600,000, Salpietra made multiple additional unsecured loans in exchange for separate promissory notes totaling $260,000 (which were evidenced by Ecology's filings with the Securities and Exchange Commission, though the notes themselves and the bank records evidencing the transfers of money were not in evidence) and for more stock. He also appears to have made informal separate unsecured "loans" to Ecology by paying its premises rent in exchange for stock or promissory notes. Salpietra received the bulk of his shares in

Ecology stock primarily by way of an investment he made through Fairmount Five, LLC. In late 2011 or early 2012, that entity converted its investment in Ecology to Ecology shares and distributed those shares to Salpietra and others who had invested in Fairmount Five, LLC. In all, Salpietra amassed over one million shares of Ecology stock. In early 2011, he became a member of Ecology's board, but not an officer. He was not compensated for his services.

Facing substantial financial difficulties, Ecology ceased operating in December 2012 and filed its Chapter 7 bankruptcy on May 15, 2013, scheduling debts to its various investors, among others, and the Intellectual Property among its assets.[1] Salpietra moved for relief from the automatic stay. The motion was opposed by Mitch Shaheen, who in July 2008 had made two unsecured loans to Ecology totaling $250,000. As such loans were intended to be short-term until Ecology obtained alternate financing, Ecology agreed to pay him 25% interest APR. Ecology was unable to obtain the alternate financing, causing the interest on Shaheen's loans to compound dramatically. Shaheen filed a secured proof of claim in the amount of $818,363.53 stemming from a judgment he obtained in December 2011 in the U.S. District Court for the Eastern District of Michigan. Although he claims to be a secured creditor, Shaheen apparently has no specific security interest in the Intellectual Property.[2] Shaheen alleges that the Intellectual Property can be sold for an amount higher than Salpietra's secured claim, thus potentially allowing for the repayment of at least a portion of Shaheen's claim. The Chapter 7 Trustee originally opposed Salpietra's motion, but since withdrew that objection, effectively abandoning

---

[1] Ecology's only other possible asset of value is its "public shell," i.e. the vehicle by which it became a public company through a reverse merger. The Trustee has indicated that Salpietra's security interest does not extend to this asset, but has expressed doubts as to whether it is salable or has any value.

[2] Shaheen, as the basis for his claim being secured, had filed with the Macomb County Register of Deeds a Notice of Judgment Lien, which was issued pursuant to and references Mich. Comp. Laws § 600.2805. That provision only pertains to a judgment debtor's current or future interests in real property (of which Ecology has none). See Mich. Comp. Laws § 600.2803.

the Intellectual Property as an asset of the estate. The contested issues here are (a) whether Salpietra holds a valid security interest in the Intellectual Property and (b) whether Ecology has any equity in the Intellectual Property sufficient to defeat Salpietra's motion.

## Discussion

### I. Whether Salpietra Has a Valid Security Interest in the Intellectual Property

Shaheen challenges the validity of Salpietra's purported security interest in the Intellectual Property because it was not recorded with the U.S. Patent and Trademark Office (PTO). Shaheen argues that, notwithstanding the filing of the UCC statement with the Nevada Secretary of State, a filing with the PTO is required by 35 U.S.C. § 261 of the Patent Act, which states in relevant part:

> An interest that constitutes an assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage.

As there is no binding case law in the Sixth Circuit on this issue, Salpietra relies principally on Moldo v. Matsco, Inc. (In re Cybernetic Servs., Inc.), 252 F.3d 1039 (9th Cir. 2001) which held that recording a security interest in a patent pursuant to the California UCC was sufficient to perfect it, and that filing with the PTO was not required. The court opined that "assignment, grant or conveyance" refers to and encompasses only transfers of ownership, not to the creation of a security interest. Id. at 1048-52. For example, an interest that constitutes a "grant" was interpreted as meaning the transfer of an ownership interest pertaining to a specific geographic area, not the "granting" of a security interest. Id. at 1050. That court also held that the Patent Act was not preempted by the subsequently-adopted Article 9 of the UCC. Congress has revised the Patent Act numerous times and, in doing so, continually preserved the language requiring filing

with the PTO only for transfers of ownership interests. Id. at 1056. This thoroughly reasoned analysis was adopted by In re Tower Tech, Inc., 67 Fed. Appx. 521 (10th Cir. 2003) (unpublished) and In re Pasteurized Eggs Corp., 296 B.R. 283 (Bankr. D. N.H. 2003), and commends itself to this Court.

Shaheen's arguments against Cybernetic are unpersuasive. First, this Court declines Shaheen's invitation to apply City Bank & Trust Co. v. Otto Fabric, Inc. (In re Otto Fabric, Inc.), 55 B.R. 654 (Bankr. D. Kan. 1985) (holding that a filing with the PTO is required to perfect a security interest in a patent) because that case (a) was reversed on appeal on that very issue in 83 B.R. 780 (D. Kan. 1988); and (b) is contrary to the greater persuasive weight of the above-noted authorities. Second, this Court is not persuaded by Shaheen's discussion of Nat'l Peregrine, Inc. v. Capitol Fed. Savs. & Loan Ass'n (In re Peregrine Entm't, Ltd.), 116 B.R. 194 (C.D. Cal. 1990), which is a copyright case. The terms of the applicable statutes relating to copyrights, unlike the patent statutes, specifically refer to and govern security interests, as was discussed by Cybernetic, 252 F.3d at 1056. Therefore, this Court concludes that Salpietra properly perfected a security interest in the Intellectual Property and Shaheen, as the party contesting such, has not borne his burden.

## II. The Amount of Salpietra's Secured Claim

To prevail, Salpietra must show that Ecology has no equity in the Intellectual Property, i.e. that its value is less than the amount of Salpietra's secured claim. Salpietra's filed proof of claim of $987,046.57 consists of a secured portion of $687,019.57, as noted, with the difference being the unsecured portion.[3] As the filed claim met the form and content requirements of

---

[3] Although the Note provides that Ecology shall reimburse Salpietra for all reasonable costs, attorney's fees, and other expenses in connection with the Note, Salpietra's proof of claim does not request such as being part of the secured claim.

Fed.R.Bankr.P. 3001, it constitutes prima facie evidence of both the validity and amount of that claim, which in essence shifts to Shaheen the burden of going forward to rebut the prima facie presumption. See In re Kemmer, 315 B.R. 706, 713 (Bankr. E.D. Tenn. 2004). The Court has heretofore dealt with the validity issue. Shaheen questions the amount of the claim, arguing initially that because Salpietra only advanced $300,000 contemporaneously with the issuance of the Note, only that amount should be considered to be secured. The clear facts are that the remaining $300,000 was in fact advanced over a period of months, that the Note clearly indicates the intention of Ecology and Salpietra that the entire $600,000 was to be considered the obligation secured by the Intellectual Property, and that where other loans or loan extensions were made, they involved separate additional consideration (i.e. unsecured notes or issuances of stock). Shaheen has not directed the Court to any legal authority that for a loan to be secured, the advances constituting that loan otherwise intended to be secured must be all made at the same time. On the contrary, "An instrument is issued or transferred for value if… The instrument is issued or transferred for a promise of performance, *to the extent the promise has been performed*." Mich. Comp. Laws § 440.3303(1) (emphasis added).

Shaheen also argues that Ecology has repaid a portion of the secured debt it owed to Salpietra. As noted, Salpietra continued to extend unsecured credit to Ecology in exchange for other promissory notes and for Ecology stock. Not only has Shaheen not borne his burden of proof on that argument, but the affirmative evidence before the Court was that the issuance of the stock to Salpietra was consideration for and incidental to new investments in Ecology separate from the secured loan, or a modification of existing loans (such as the extension of maturity dates). There is also direct testimony by Iannotti, who the Court finds to be a credible witness, that Ecology repaid nothing to Salpietra on the secured loan. Shaheen's argument that any

transfers of value to Salpietra (such as shares of stock) should have been applied to the prior secured debt, rather than the unsecured debt, are unpersuasive because, unless a debtor directs otherwise, a creditor is free to apply payments as it pleases. In re Corradini, 276 B.R. 571, 576 (Bankr. W.D. Mich. 2002) aff'd sub nom. Corradini v. Corradini, 75 Fed. Appx. 444 (6th Cir. 2003) (unpublished); People for Use & Benefit of Mich. Elec. Supply Co. v. Vandenburg Elec. Co., 343 Mich. 87, 92-93 (1955). It is evident that both Ecology and Shaheen deemed such transfers as applying to the unsecured debts, not the prior secured debt (though it is unclear whether that is because Ecology requested such application or whether Salpietra made that election in the absence of Ecology's request) (see Ex. 4, Pg. 33). The only reasonable conclusion that can be reached from this record is that the amount of the secured claim is the amount set forth in Salpietra's secured proof of claim and that Shaheen has not born his burden of rebutting the prima facie presumption of the filed claim's validity (and even if he had, Salpietra would have borne his ultimate burden of proof by a preponderance).

### III. The Value of the Intellectual Property

Whether Ecology has any equity in the Intellectual Property hinges on its value. Although no party contends that the 2008 valuation for $50-55 million (conducted around Ecology's zenith) is even remotely indicative its actual present value, at no point has any party indicated its opinion of the value. No other professional valuation or appraisal was put into evidence, nor was any expert testimony offered. Iannotti, Salpietra's lay witness, testified as to the above-noted difficulties Ecology had in commercializing the Intellectual Property, an appropriate inference therefrom being that the value is minimal or perhaps nonexistent.

The Trustee's participation at the evidentiary hearing was very limited. She was primarily concerned with whether Salpietra had colluded to frustrate the administration of the Intellectual

Property as an asset of the bankruptcy estate, but ultimately concluded that was not the case. The Trustee detailed her various unsuccessful efforts to commercialize the Intellectual Property over a number of months. The Trustee took the position that Salpietra's secured claim is valid, meaning that in order for the Trustee to pay all the estate's administrative expenses,[4] pay Salpietra's secured claim in full, and then begin paying other creditors, she would have to sell the Intellectual Property for substantially more than the amount of Salpietra's secured claim. The Trustee contemplated hiring a broker to sell the Intellectual Property, as she had done in a prior separate case, but found that brokers requested high retainer fees and apparently refused to work on a contingency basis. Ecology provided the Trustee with a list of about 15-20 persons who might be interested in buying or licensing the Intellectual Property. The Trustee approached these persons but was unsuccessful, though one unnamed person made an offer of $400,000 (which the Trustee implied was declined). The Trustee also indicated that she was contacted by a number of Ecology's investors and shareholders regarding purchasing the Intellectual Property, but they were unable to reach any agreement. Unless outweighed by other credible evidence, a Chapter 7 trustee's position in such cases ought to be afforded considerable deference. Shaheen offered no countervailing evidence.

Thus, in sum, the value of the Intellectual Property (or the lack thereof) is reflected by the numerous unsuccessful efforts by various persons to derive any meaningful revenue from it. Ecology was not able to commercialize the Intellectual Property, either during its years of operation or during the 5-6 month period between its cessation of operation and its bankruptcy filing. Ecology's investors, at one point, had such faith in its profit potential that they personally

---

[4] Aside from an administrative expense for the Trustee's fees, Ecology's landlord for their Akron, Ohio facility will also have an administrative expense for its costs in securing and storing certain chemicals that Ecology abandoned on the premises.

extended to it hundreds of thousands of dollars of unsecured credit. However, none of those investors appear to now have enough faith in the present value of the Intellectual Property to seek to acquire it for something in excess of Salpietra's secured claim.

The Court need not (and cannot) speculate as to the precise value of the Intellectual Property. But given these facts, it is quite clear that despite the best efforts of Ecology and the Trustee, who both possessed capable business judgment and were highly motivated to commercialize the Intellectual Property, no person is willing to purchase it for any amount approaching the amount of Salpietra's secured claim. These facts are highly probative of the Intellectual Property's lack of value or lack of any value that exceeds the amount of Salpietra's secured claim. Whether one describes the indicated evidence as "anecdotal," as Shaheen does, or otherwise, on this record and given the total lack of other evidence, it preponderates and is sufficient. The totality of the evidence leads to the fair and reasonable inference that the Intellectual Property is worth less than Salpietra's secured claim.[5]

The Court therefore finds by a preponderance, given the totality of the evidence presented, that the value of the Intellectual Property is low enough that Ecology has no equity therein and that Salpietra has met his burden of proof and is entitled to relief from the automatic stay as to the Intellectual Property. The Court will contemporaneously enter an appropriate order.

**Signed on March 18, 2014**

                                        **/s/ Walter Shapero**
                                        **Walter Shapero**
                                        **United States Bankruptcy Judge**

---

[5] It is worth noting that, based on this record, a similar conclusion would likely be reached if (as Shaheen argues) the amount of Salpietra's secured claim was substantially less than he claims.